This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendants-Appellants Thomas and Lisa Orr have appealed from a decision of the Wayne County Court of Common Pleas that granted judgment in favor of Plaintiff-Appellee Farm Credit Services of Mid-America, FLCA ("Farm Credit") in Farm Credit's foreclosure action. This Court affirms.
 I.
{¶ 2} Farm Credit is in the business of mortgage and commercial lending, primarily to borrowers who need financing for agricultural endeavors. In August 2000, Farm Credit filed an action against Alonzo, Jane, Thomas ("Tom"), and Lisa Orr. In the complaint's first cause of action, Farm Credit sought judgment on a promissory note executed by Alonzo and his first wife Agnes Orr in 1979. In its second cause of action, Farm Credit sought foreclosure of its lien on the real estate securing the note, which was owned by Alonzo's and Agnes' son Tom, and Tom's wife Lisa.
{¶ 3} In August 2001, the trial court disposed of the first cause of action by granting judgment on the note in favor of Farm Credit, in the amount of $122,867.67 plus interest. Farm Credit proceeded to trial on its second cause of action against Tom and Lisa, following which the court entered judgment in favor of Farm Credit. The court found that the balance due on the note was $132,342.45 plus interest, and determined that certain real property owned by Tom and Lisa secured the note and was subject to Farm Credit's mortgage lien. The court further found that the conditions of the mortgage had been broken by the failure of payment of the note, and that Farm Credit was therefore entitled to foreclosure of its lien and payment of proceeds from a sheriff's sale of the property.
{¶ 4} Tom and Lisa[1] have timely appealed, asserting two assignments of error. The trial court stayed its judgment decree of foreclosure and order of sale pending resolution of this appeal. We have consolidated both assignments of error to facilitate review.
 II. Assignment of Error Number One
{¶ 5} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT SURETYSHIP LAW DID NOT APPLY WHERE [TOM] PLEDGED HIS FARM BY MORTGAGE TO SECURE 1979 NOTE ON WHICH HE WAS NOT A MAKER, AND [FARM CREDIT] RELEASED MAKER'S MORTGAGED LAND WITHOUT THE CONSENT OF [TOM], TO THE DETRIMENT OF [TOM]."
 Assignment of Error Number Two
{¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT FARM CREDIT HAD A RIGHT TO FORECLOSURE UPON [TOM'S] FARM WHEN [FARM CREDIT] RELEASED ITS PRIMARY SECURITY, A MORTGAGE ON THE MAKER'S FARM, WITHOUT CONSIDERATION AND WITHOUT [TOM'S] CONSENT, THEREBY CAUSING [TOM] TO LOSE HIS SUBROGATION RIGHTS AGAINST THE PRIMARY SECURITY."
{¶ 7} We construe Tom's assignments of error as arguing that the trial court's judgment rendered after trial is against the manifest weight of the evidence. When an appellant challenges a judgment in a civil case as against the manifest weight of the evidence, an appellate court's standard of review is the same as that in a criminal context.Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a conviction is against the manifest weight of the evidence, this Court must:
{¶ 8} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 9} An appellate court that overturns a trial court's judgment as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. State v. Thompkins (1997),78 Ohio St.3d 380, 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant.Otten, 33 Ohio App.3d at 340. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 10} An understanding of the trial court's adjudication of Tom's liability on the note requires some familiarity with the Orrs' family business, their various properties, and their several transactions with Farm Credit.
{¶ 11} As consideration for an agricultural loan from Farm Credit's predecessor in interest, Alonzo and his wife Agnes executed a promissory note in 1979 ("1979 note") in the amount of $265,000. The note was secured by three properties owned by Alonzo and Agnes: 1) the "home farm," 2) the "Martin farm," and 3) the "Jaycot farm."
{¶ 12} Agnes died in 1979, as a result of which Tom received certain life insurance proceeds. Tom used these proceeds to purchase from Alonzo the Martin farm and the Jaycot farm. Farm Credit was not advised of these purchases, and continued to hold a mortgage lien on the Martin and Jaycot farms to secure the 1979 note.
{¶ 13} At some point, Tom conveyed approximately 1.6 acres from the Martin farm to Alonzo. This property, upon which Alonzo constructed a house, became known as the "Hackett Road property."
{¶ 14} At Tom's request, Farm Credit released its interest in the Martin farm in 1987 because it was over-collateralized. This left Alonzo's home farm, Tom's Jaycot farm, and Alonzo's Hackett Road property as security for the 1979 note.
{¶ 15} In 1994, one of the main hog facilities at the home farm was destroyed by fire. In order to maintain the farm operation, Alonzo and Tom borrowed approximately $226,000 from Farm Credit in order to construct a new hog facility. Farm Credit required that the home farm operate as collateral to secure this loan, because the new hog facility would be constructed on the home farm.
{¶ 16} The parties therefore agreed to a restructuring of the collateral securing the 1979 note. Accordingly, Alonzo, Alonzo's second wife Jane, and Tom executed a mortgage in February 1994 ("1994 mortgage"), pursuant to which Tom's Martin farm and Alonzo's Hackett Road property secured the 1979 note.
{¶ 17} Alonzo sold the Hackett Road property in 1995, using approximately $98,000 of the proceeds to pay down the 1979 note. Consequently, Farm Credit released its interest in the Hackett Road property, leaving a balance of approximately $100,000 on the 1979 note secured by Tom's Martin farm.
{¶ 18} Throughout Tom's involvement in the hog farm operation, he had been living at the home farm and making payments on the 1979 note. Both Alonzo and Tom intended that Tom would one day purchase the home farm, which was owned by Alonzo and the estate of Alonzo's late wife Agnes. According to the terms of a trust left by Agnes, Tom was entitled to a reduction in the purchase price of the home farm based on the number of years he had worked at the farm.
{¶ 19} In 1996, Alonzo and Tom were negotiating terms of the sale of the home farm to Tom. In 1998, however, the home farm was appraised at a value substantially higher than the purchase price contemplated by Tom. A family dispute ensued, during which Alonzo evicted Tom from the home farm and sold it to someone else. Thereupon Tom stopped making payments on the 1979 note. Farm Credit then filed the instant action, seeking judgment against Alonzo for defaulting on the note and foreclosure of its lien on the Martin farm owned by Tom, which secured the 1979 note pursuant to the 1994 mortgage.
{¶ 20} Tom has argued that he is a surety under the common law because he signed the 1994 mortgage to secure the indebtedness of Alonzo rather than as a mortgagor, and as a surety he was damaged by certain actions taken by Farm Credit. In his first assignment of error, Tom has argued that Farm Credit violated its duty to him as a surety by releasing the Hackett Road property, which also secured the 1979 note, after it sold for $168,000 but only $98,000 of the proceeds were applied to the balance on the note. In his second assignment of error, Tom has contended that Farm Credit deprived Tom of his subrogation rights against its "primary security," the home farm, by releasing the home farm without consideration and without Tom's consent.
{¶ 21} However, Tom's argument that he did not consent to the release of the home farm as collateral for the 1979 note is belied by the uncontroverted testimony of Tom Ambrose, the loan officer who executed the 1994 mortgage on behalf of Farm Credit. Mr. Ambrose testified that all parties agreed to the release of the home farm as collateral for the 1979 note because a valid first lien on the home farm was necessary to secure a new note in 1994, pursuant to which Farm Credit loaned Tom and Alonzo $226,000 to replace the burned hog barn. Mr. Ambrose further testified that all parties agreed that the Martin Farm and the Hackett Road property would replace the home farm as security for the 1979 note. Given his participation in the realignment of collateral in order to obtain financing for construction of a new hog facility, Tom cannot now claim the benefits of status as a surety.
{¶ 22} Furthermore, the loan documents themselves do not evidence an agreement that Tom signed the 1994 mortgage as anything other than an unrestricted mortgagor, or that Farm Credit would enforce its mortgage liens in any particular order. On the contrary, the 1994 mortgage clearly identifies Tom as a "mortgagor," and provides: "[I]f there be any security other than this mortgage, for the indebtedness secured hereby, then upon default the mortgagee may proceed upon this and other security, either concurrently or separately, in any order it elects[.]"
{¶ 23} After thoroughly reviewing the record, we conclude that the judgment of the trial court concluding that Tom was not a surety and granting Farm Credit foreclosure of its mortgage lien on the Martin farm was not against the manifest weight of the evidence. Tom's assignments of error are without merit.
 III.
{¶ 24} Tom's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J. and BATCHELDER, J. CONCUR.
[1] Tom was unmarried at the time he signed the mortgage securing the note. He subsequently married Lisa, who acquired an interest in the mortgaged property through the marriage and by deed after Farm Credit recorded its mortgage. For ease of discussion, we will hereafter collectively refer to Lisa's and Tom's interest in the mortgaged property as Tom's interest.